■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL RIVERA, Appellant.—Judgment of the Supreme Court, New York County (Michael Obus, J.), rendered September 12, 1989, convicting defendant, after trial by jury, of manslaughter in the first degree and criminal possession of a weapon in the third degree, and sentencing him as a violent predicate felony offender, to concurrent prison terms of 12½ to 25 years on the manslaughter charge and from 3½ to 7 years on the weapons charge, is reversed, on the law, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30 day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

On the evening of October 22, 1988, Stanford Hewitt, his cousin Sinclair Towe and two friends Clarence Crawford and James Williams attended church services in Brooklyn. They made plans to meet later that day with two others to see a movie in Manhattan. Hewitt, Towe and Crawford went to Manhattan and met Williams at the National Theater at 43rd Street and Broadway at about 10:00 or 10:30 P.M. The two other friends never showed up and the four young men attended the last showing of the movie "Halloween". After the movie, between 1:30 or 2:00 A.M., they went to a McDonalds and then bought beer. They drank three quarts of beer on their way to Studio 54 at 54th Street. However, since it was too expensive to get in, they decided to go to the "World". They took the subway downtown, but, once there, felt they did not fit in with the "punk" crowd. They decided to go to Hewitt's residence in Brooklyn. At about 3:00 or 4:00 A.M. they were walking on Pitt Street toward the J Train, when they met with defendant, Angel Alicea and two unidentified men. Defendant challenged Hewitt demanding to know why he was "looking" at him. Two witnesses testified defendant verbally provoked Hewitt by taunts and cursing. Williams told Hewitt who "was standing his ground" to "[l]ets just leave". Alicea in turn began to taunt Crawford. Defendant removed a closed black handled knife from under his shirt near his groin, walked over to Alicea and whispered something to Alicea. The

testimony indicated something was exchanged between the two men. Defendant, now with nothing in his hand, ran over to Hewitt and punched him. The two began to fight. One of defendant's friends drew a gun. Alicea produced the knife defendant had brandished earlier. Defendant was on the ground with Hewitt on top of him. Williams "hunched over" Hewitt and was trying to protect him as Alicea came at them with the open knife in his upraised hand. The man with the gun pointed it at Williams and said "come on". Crawford who saw the gun pointing at Williams, also saw the gunman "clicking" the weapon. However, since no shots were fired he assumed the weapon was not working or a fake. Crawford attempted to ward off a knife blow from Alicea and grabbed the knife by the blade. Alicea pulled it out of Crawford's grasp, inflicting a deep slash across Crawford's fingers. Alicea also slashed Crawford in the neck and cut his coat. In the meantime, Williams had been struggling with the man with the gun. He was struck several times on the head with the gun and with what he believed was a brick. He could not see when blood dripped into his eyes, became dizzy and fell. Alicea was seen running over to defendant and Hewitt, still struggling on the ground. Crawford, Williams and Towe crossed the street to look for a hospital when Crawford was hit with a rock. They turned around and noticed defendant, Alicea and the two others running off. Hewitt, who was standing, called out to Crawford, then grabbed his stomach and collapsed. Hewitt later died as a result of two stab wounds, one in the chest penetrating the heart, one in the back which penetrated Hewitt's left lung. Additionally, he suffered several other superficial cuts on his hand and neck.

We have previously affirmed the conviction of co-defendant Angel Alicea of murder in the second degree and criminal possession of a weapon in the fourth degree (see, *People v Alicea*, 173 AD2d 397).

However, we find that the evidence as to defendant Michael Rivera was insufficient to prove his guilt of manslaughter in the first degree. While the proof summarized above may have been sufficient to show that defendant intended to physically accost the victim, there was no proof, beyond a reasonable doubt, that defendant did the stabbing or shared the intent of the stabber. There was an insufficient showing of any design by defendant acting with Alicea to cause the deceased serious physical injury or a showing of a community of purpose between the stabber Alicea and defendant (*People v La Belle*, 18 NY2d 405, 412).

The evidence showed that Alicea wielded the knife, slashing and injuring one of the witnesses before being observed approaching defendant and the deceased, with that knife. Such proof is persuasive of *Alicea's* intent to kill. While the evidence established that defendant gave the knife to Alicea *before* he engaged Hewitt in an unarmed fight, this fact provides insufficient proof of a community of purpose to use the knife and failed to demonstrate such intent, even when coupled with testimony that defendant had a brief conversation with Alicea. Since none of the witnesses could hear what was said, the jury relied only upon sheer speculation that this slight interchange evinced criminal intent. It is equally plausible that defendant gave the knife to Alicea to ensure a "fair fight" between himself and Hewitt and that his few words were an admonition for Alicea not to get involved. "[A] spontaneous and not concerted or planned use of the weapon to kill is not, without more, attributable to the companion whose guilt in a joint design to effect death must be established beyond a reasonable doubt" *(People v Monaco,* 14 NY2d 43, 45).

The totality of the evidence therefore does not lead to the sole conclusion that defendant knowingly participated with Alicea in his knife attack with the intent to cause serious physical injury to Hewitt. Likewise, since an essential element of criminal possession of a weapon in the third degree, as charged to the jury, was an intent to use the weapon unlawfully, we reverse defendant's conviction on this count also. Concur—Murphy, P. J., Ross, Asch, Kassal and Smith, JJ.