*668 OPINION OF THE COURT
Kaye, J.
A person who, with intent to possess cocaine, orders from a supplier, admits a courier into his or her home, examines the drugs and ultimately rejects them because of perceived defects in quality, has attempted to possess cocaine within the meaning of the Penal Law. As the evidence was legally sufficient to establish this sequence of events, we reinstate defendant’s conviction of attempted criminal possession of a controlled substance in the first degree.
I.
By jury verdict, defendant was convicted of conspiracy and attempted possession of cocaine. The latter charge — the only one at issue on this appeal — centers on the events of March 21, 1988.
Evidence at trial revealed that, commencing in November 1986, officers of the Manhattan North Narcotics Division began investigating the activities of defendant, his brother Miguel and others. Their investigation techniques included the use of an undercover officer to infiltrate the organization, stakeouts and court-authorized wiretaps. In July 1987 the undercover met with Miguel at a Manhattan apartment and purchased cocaine. At that time, Miguel introduced defendant to the officer, telling her that they "work together.”
A wiretap on defendant’s telephone at his Bronx apartment revealed that for several days prior to March 21, 1988, he was negotiating with Luis Rojas to purchase kilogram quantities of cocaine.[1] On March 21, at 11:37 a.m., Rojas called defendant and asked, "are you ready?” Defendant replied "come by here” and Rojas responded, "I’m going over.” At 11:42, defendant called "Frank,” an associate, and told him that he "spoke to the man” who would be "coming over here * * *. Right now.”
About a half hour later, around 12:15 p.m., officers staking out defendant’s six-floor apartment building saw a man pull up in a car, remove a black and white plastic bag from the *669 trunk, and enter the building. The bag’s handles were stretched, indicating that the contents were heavy. At 12:30, the man emerged from the building, carrying the same plastic bag which still appeared to be heavy. He placed the bag back in the trunk and drove off.
Minutes later, at 12:37 p.m., defendant called Frank, stating that he "saw the man” but "those tickets * * * were no good; they weren’t good for the game man.” Frank wondered whether "they got more expensive, the seats” and defendant explained that they were the "same price and all” but they were "not the same seats * * * some seats real bad, very bad, very bad.” Defendant elaborated: "two pass tickets together on the outside stuck together, like a thing, like a ticket falsified. Then I told him to take it away, no, I don’t want any problems and anything you see.” Frank asked if defendant was told when the tickets would arrive, and defendant responded "No because who came was someone, somebody else, the guy, the messenger.” Defendant acknowledged that he "want[s] to participate in the game but if you can’t see it, you’re going to come out upset.”
At 12:50 p.m., Rojas called defendant and said something inaudible about "my friend.” Defendant responded, "Oh yes, but he left because (inaudible) it doesn’t fit me. * * * You told me it was the same thing, same ticket.” Rojas rejoined, "No. We’ll see each other at six.”
Finally, at 1:26 p.m., defendant telephoned Hector Vargas, who wanted to know "what happened?” Defendant said, "Nothing. I saw something there, what you wanted, but I returned it because it was a shit there.” Hector wanted to know, "like how?” but defendant simply responded, "No, no, a weird shit there.” Vargas suggested that he might be able to obtain something "white and good.”
The following day, defendant again called Vargas to discuss "the thing you told me about, you know what I’m referring to”. Defendant recommended that Vargas "go talk to him, talk to him personally and check it out.” Defendant thought that "it would be better if you took the tickets, at least one or whatever.”
At trial, in motions before and after the verdict, defendant argued that the foregoing evidence was insufficient to establish that he attempted to possess cocaine on March 21. The trial court rejected those arguments and sentenced defendant, *670 upon the jury’s guilty verdict, to a prison term of 25 years to life, the maximum permitted by law.[2]
On appeal, a sharply divided Appellate Division reversed and vacated the attempted possession conviction, the majority concluding that "[e]yen were we to accept [the] attenuated inference that the visitor actually reached defendant’s apartment and offered his contraband to him, the remaining evidence shows defendant’s flat rejection of that offer, and thus total abandonment of the criminal enterprise with respect to this particular quantity of cocaine.” (172 AD2d 103, 105-106.) One of the dissenting Justices granted the People leave to appeal, and we now reverse.
II.
A person knowingly and unlawfully possessing a substance weighing at least four ounces and containing a narcotic drug is guilty of criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]). Under the Penal Law, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he [or she] engages in conduct which tends to effect the commission of such crime.” (Penal Law § 110.00.) While the statutory formulation of attempt would seem to cover a broad range of conduct — anything "tend[ing] to effect” a crime — case law requires a closer nexus between defendant’s acts and the completed crime.
In People v Rizzo (246 NY 334, 337), we observed that in demarcating punishable attempts from mere preparation to commit a crime, a "line has been drawn between those acts which are remote and those which are proximate and near to the consummation.” In Rizzo, this Court drew that line at acts "very near to the accomplishment of the intended crime.” (Id., at 337.) Though apparently more stringent than the Model Penal Code "substantial step” test (Model Penal Code § 5.01 [1] [c]) — a test adopted by some Federal courts (see, e.g., United States v Jackson, 560 F2d 112 [2d Cir], cert denied 434 US 941) —in this State we have adhered to Rizzo’s "very near” or "dangerously near” requirement, despite the later enactment of Penal Law § 110.00 (see, People v Mahboubian, 74 NY2d 174, 191; People v Warren, 66 NY2d 831, 833; People v Di Stefano, 38 NY2d 640, 652).[3]
*671 A person who orders illegal narcotics from a supplier, admits a courier into his or her home and examines the quality of the goods has unquestionably passed beyond mere preparation and come "very near” to possessing those drugs. Indeed, the only remaining step between the attempt and the completed crime is the person’s acceptance of the proffered merchandise, an act entirely within his or her control (see, People v Mahboubian, 74 NY2d, at 192, supra).
Our decision in People v Warren (66 NY2d 831) is thus readily distinguishable, as Justice Asch, dissenting at the Appellate Division, recognized. In that case, an informant and an undercover officer posing as a cocaine seller met defendants in a hotel room and reached an agreement for the sale of about half a pound. The actual exchange, however, was to occur hours later, in another part of town, after repackaging and testing. Moreover, when defendants were arrested at that meeting, the sellers had insufficient cocaine on hand and defendants had insufficient funds. We concluded that since "several contingencies stood between the agreement in the hotel room and the contemplated purchase,” defendants did not come "very near” to accomplishment of the intended crime (66 NY2d, at 833). The same cannot be said here.
Significantly, neither the Appellate Division nor the dissent in this Court disputes the proposition that a person who arranges for the delivery of drugs and actually examines them has come sufficiently close to the completed crime to qualify as an attempt. Rather, the Appellate Division relies on two other grounds for reversal: (i) the evidence was insufficient to establish that defendant in fact met with a drug courier and examined his wares; and (ii) in any event, defendant’s ultimate rejection of the drugs constituted an abandonment of the criminal enterprise, vitiating the attempt. (The dissent in this Court is limited to the first ground.) Neither ground is persuasive.
*672 Sufficiency of the Evidence
A jury, of course, concluded from the evidence presented that defendant attempted to possess cocaine on March 21, 1988. In examining the record for legal sufficiency, "the evidence must be viewed in a light most favorable to the People * * * to determine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt” (People v Steinberg, 79 NY2d 673, 681-682). This deferential standard is employed because the courts’ role on legal sufficiency review is simply to determine whether enough evidence has been presented so that the resulting verdict was lawful.
The Appellate Division is also empowered to review the record to determine whether the verdict is against the weight of the evidence (CPL 470.15 [5]; People v Bleakley, 69 NY2d 490, 495). In so doing, the Appellate Division may draw inferences contrary to those implicitly drawn by the jury, and conclude that while legally valid, the verdict should nevertheless be set aside as contrary to the weight of the evidence (see, CPL 470.20 [5]; People v Bleakley, 69 NY2d, at 495, supra). In this case, the Appellate Division did not use its weight-of-the-evidence review powers, but vacated defendant’s conviction for legal insufficiency (172 AD2d, at 106, supra). Accordingly, this Court may review the Appellate Division’s determination (see, CPL 470.15 [4] [b]; 450.90 [2] [a]; see also, People v Acosta, 79 NY2d 971 [denying defendant’s motion to dismiss appeal]). When we reverse in this procedural posture, however, the case is remitted to enable the Appellate Division to weigh the evidence (CPL 470.40 [2] [b]).
Applying these governing standards, we conclude that the evidence was legally sufficient to support the jury’s finding that defendant met with a drug courier in his home on March 21. About a half-hour after defendant’s supplier, Rojas, told defendant that he would be coming over, the police saw a man enter the apartment building with a weighted-down plastic bag and emerge 15 minutes later with the same heavy bag. Contemporaneously with the unidentified man’s departure, defendant reported to an associate that he met with a messenger but that he rejected the offer because the "seats” were "very bad” and the "tickets” looked "falsified.” When Rojas immediately called defendant asking about his "friend,” defendant explained that "he left” and complained that Rojas *673 misrepresented that the "same ticket” would be brought. And shortly thereafter, defendant called Vargas and told him that he "saw something there, what you wanted, but I returned it because it was a shit there.”
On the evidence presented, a rational jury could have found beyond a reasonable doubt that defendant, with the intent to possess more than four ounces of a controlled substance,[4] met with Rojas’ courier and examined cocaine, but rejected it because he was dissatisfied with the quality.
The dissent’s contrary conclusion is reachable only by arbitrarily fragmenting the evidence. The dissent contends that the stakeout officers’ observations of the man carrying the bag amount to "no material evidence at all” because the man was not stopped by the police or seen approaching defendant’s apartment (dissenting opn, at 677). Then, having erased this evidence from the case, the dissent claims that the "sole basis” for defendant’s guilt was a wiretapped conversation in which he told an individual that he had just rejected tickets (dissenting opn, at 677).
The law, however, did not oblige the jury to take such an artificial view of the evidence. Rather, the jury function was to evaluate the trial evidence as a whole, to consider how the individualized bits of evidence fit together, including inferences from the evidence that rational individuals were entitled to draw. As background, the jury knew from defendant’s many earlier conversations about "tickets” and his meeting with the undercover that he was involved with drugs. Further, the jury knew that in the days immediately preceding March 21 defendant was negotiating with Rojas to buy kilos of cocaine and that on March 21 Rojas said that he was coming over. The unidentified man’s visit to the apartment building with the parcel — coinciding to the minute with defendant’s conversations — was fully consistent with defendant’s several later admissions that he had met with a courier but rejected his merchandise. While the dissent would ignore the totality of this evidence, the jury most assuredly was not required to do so.
Rejection as Abandonment
We similarly disagree with the Appellate Division’s suggestion that defendant’s "flat rejection” of the drugs vitiated the *674 attempt. Penal Law § 40.10 (3) provides an affirmative defense to an attempt charge "under circumstances manifesting a voluntary and complete renunciation of [the] criminal purpose”. To qualify for this defense, "the abandonment must be permanent, not temporary or contingent, not simply a decision to postpone the criminal conduct until another time” (People v Taylor, 80 NY2d 1, 13-14).
An abandonment theory is inapposite here. First, abandonment is an affirmative defense (Penal Law § 40.10 [3]; People v Taylor, 80 NY2d, at 15, supra), meaning that defendant has the burden of establishing it by a preponderance of the evidence (Penal Law § 25.00 [2]; People v Butts, 72 NY2d 746, 749, n 1). At trial, however, defendant never sought to present a renunciation defense. Second, and even more fundamentally, the evidence revealed that even after rejecting the March 21 offer, defendant continued making efforts to obtain cocaine. Thus, while it may be true that there was an abandonment "with respect to [that] particular quantity of cocaine” (172 AD2d, at 106, supra), this is immaterial for purposes of the statutory renunciation defense. Rather, there must be an abandonment of over-all criminal enterprise (see, People v Taylor, 80 NY2d, at 14, supra), which on this record plainly was not the case.
III.
On this appeal, defendant raises several other arguments which were summarily rejected by the Appellate Division. Inasmuch as the relief he seeks — a new trial — goes beyond mere affirmance of the Appellate Division order and thus constitutes a request for affirmative relief, defendant was required to obtain leave to appeal (see, People v Carpenito, 80 NY2d 65, 68). Defendant in fact sought leave to appeal from a Judge of this Court, but his application was denied (79 NY2d 971). Thus, we are precluded from reviewing defendant’s alternative contentions seeking a new trial.
We note, however, that although the Appellate Division rejected defendant’s "other” claims, by reversing the attempted possession conviction and vacating the resultant sentence that court necessarily did not pass on defendant’s argument that his sentence was harsh and excessive. Therefore, on remittal, should the Appellate Division uphold the attempted possession conviction upon exercise of its factual review power, that court should consider defendant’s excessive sentence claim.
*675 Accordingly, the order of the Appellate Division should be reversed, the conviction for attempted criminal possession of a controlled substance in the first degree reinstated, and the case remitted to that court for consideration of the facts (CPL 470.25 [2] [d]; 470.40 [2] [b]).

. These conversations were routinely conducted in code words such as "tickets” or "tires” which the prosecution expert testified represented kilos of cocaine. Many such conversations were recorded in the weeks leading up to defendant’s arrest.

. Defendant was sentenced to a concurrent term of 8⅓ to 25 years on the conspiracy charge, also the maximum.

. Indeed, the statute interpreted in Rizzo, former Penal Law §2, is *671 similar to the present version. The repealed statute provided: "An act, done with intent to commit a crime, and tending but failing to effect its commission, is 'an attempt to commit that crime.’ ”
Under the revised Penal Law, all attempts were initially classified for sentencing purposes at a lower grade than the completed crime (see, L 1965, ch 1030), but subsequent legislation, premised on the belief that certain attempts — including attempted possession of a controlled substance in the first degree — were as serious as the completed crime, classified the attempt at the same grade as the consummated crime (see, Penal Law § 110.05 [1]; Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 110.05, at 427).

. A kilogram weighs 35 ounces.