[6 NE3d 1108, 983 NYS2d 752]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LANCE J. REED, Appellant.

Argued January 6, 2014; decided February 13, 2014

**POINTS OF COUNSEL**

*Harris Beach PLLC*, Pittsford (*Svetlana K. Ivy* of counsel), and *Timothy P. Donaher, Public Defender*, Rochester (*Drew R. DuBrin* of counsel), for appellant. I. The judgment convicting Lance Reed of robbery and felony murder premised on commission of robbery should be reversed because the evidence is legally insufficient to establish a forcible stealing of property. (*People v Danielson*, 9 NY3d 342; *People v Cintron*, 95 NY2d 329; *People v Contes*, 60 NY2d 620; *People v Broadwater*, 105 AD2d 1065; *People v Calabria*, 3 NY3d 80; *People v Ledwon*, 153 NY 10; *People v Giuliano*, 65 NY2d 766; *People v Raymond*, 56 AD3d 1306; *People v Kennedy*, 47 NY2d 196; *People v Way*, 59 NY2d 361.) II. Tonya McBride's identification of the plastic grocery bag, even if viewed in the light most favorable to the People, is insufficient to serve as the basis for a conviction because of the prevalence of Tops plastic bags in Rochester, and because of the speculative nature of McBride's identification.

*Sandra Doorley, District Attorney*, Rochester (*Nicole M. Fantigrossi* of counsel), for respondent. The verdict was supported by legally sufficient evidence. (*People v Smith*, 6 NY3d 827, 548 US 905; *People v Bleakley*, 69 NY2d 490; *People v Malizia*, 62 NY2d 755, 469 US 932; *People v Contes*, 60 NY2d 620; *People v Grassi*, 92 NY2d 695; *People v Rush*, 242 AD2d 108, 92 NY2d 860; *People*

v Denis, 276 AD2d 237, 96 NY2d 782, 96 NY2d 861; *People v Simon*, 119 AD2d 602; *People v Bass*, 277 AD2d 488, 96 NY2d 780; *People v Kennedy*, 47 NY2d 196.)

### OPINION OF THE COURT

PIGOTT, J.

Shawn Thomas, a Rochester-area drug dealer, died of gunshot wounds to the head and chest on April 7, 2007. Before he left home that afternoon, Thomas had shown his girlfriend a large quantity of cash and asked her to count out $40,000. She did so, separating the $40,000 into banded $1,000 stacks and placing them in a plastic grocery bag bearing the logo of the Tops supermarket chain. She placed two knots in the top of the bag, tying the bag "real tight so you couldn't take it out." She then gave the bag to Thomas, who told her that he was going to re-up, which she took to mean that he was going to buy a supply of drugs for resale. Thomas left his home at around 1:00 p.m.

About an hour later the police responded to a residential neighborhood in Rochester, where Thomas lay dead of gunshot wounds in the middle of a street. His car was nearby. The police interviewed a number of neighborhood residents and passers-by who had been in the area. The interviews revealed that defendant Lance Jermaine Reed, whose father lived in the immediate vicinity, was present at the time of the shooting, and fled.

A witness who had been visiting defendant's father at the time of the shooting recalled that defendant arrived at his father's apartment at about 2:00 p.m. and asked to use his father's car, a gray 1990 Lincoln Town Car with a dark blue roof. While defendant was in the apartment, the father's visitor heard gunshots outside. Defendant told her, "those are firecrackers," pushed her aside and bolted from the house. Looking outside, the visitor saw a man lying in the street.

Other neighborhood residents similarly heard gun shots and saw a man walk or run from defendant's father's apartment to a gray Lincoln Town Car with a dark blue top, get in the driver's seat, and drive off. A mail carrier noticed someone lying in the middle of the street, and saw a man bend over the body quickly, get back up, and drive away in a car with a dark blue top. He wrote down part of the license plate number.

One eyewitness saw the actual shooting. He recalled that a masked man approached Thomas from behind and shot him in the head and twice more in the body, with a revolver, before getting into the rear seat of a Lincoln Town Car, also described as

gray with a blue top. The eyewitness saw two other men get into the car; one was defendant, whom the eyewitness identified at trial. Defendant was in the driver's seat. The men fled in the car.

The Lincoln, its plate number matching what the mail carrier had written down, was found in the parking lot of an apartment complex in the Rochester area, where defendant's sister lived. She described defendant as having arrived at her apartment in the afternoon of the shooting, looking "scared" and "disheveled" and breathing heavily. The police obtained permission to tow and search the vehicle.

Under the armrest between the front seats of the vehicle, the police found a plastic Tops grocery bag, tied at the top and "ripped out" at the bottom. The next day, April 8, Thomas's girlfriend identified the bag as the same one she had used to put the $40,000 in. At trial, she would testify that she had recognized it by its two knots.

Rochester police questioned defendant on April 9, 2007. Defendant admitted that he had been with Thomas, whom he had known, just before the killing and that he had driven his father's Lincoln away from the scene immediately after the killing. Defendant told the police that Thomas had agreed to follow him to defendant's father's house, in his (Thomas's) car, with the intention of giving him a ride after defendant dropped off his father's car. Defendant said that he was dropping off the keys when he heard what sounded like firecrackers outside, and that, seeing Thomas lying in the middle of the street, he fled in the Lincoln because he did not "know what was going on." In subsequent interviews, defendant was less forthcoming. He was arrested nearly a year later, on April 2, 2008, and charged with two counts of first-degree robbery, and one count each of felony murder and second-degree criminal possession of a weapon.

At trial, the jury heard testimony by the witnesses from the neighborhood, including the eyewitness who identified defendant as the man he had seen driving the Lincoln from the scene, with the gunman in the backseat. In addition, Thomas's girlfriend testified about the events preceding his departure from home on April 7, 2007, and concerning her April 8, 2007 identification of the Tops bag found in the Lincoln as the same bag she had tied and put the cash in. However, no witness testified to seeing anything being taken from Thomas at the time of the shooting.

At the end of the People's case, defendant moved for a trial order of dismissal, under CPL 290.10 (1), contending that there was legally insufficient evidence of robbery and therefore of felony murder.

The jury found defendant guilty of two counts of first-degree robbery as an accessory and one count of second-degree murder as an accessory, acquitting him of the weapon possession charge. County Court then denied defendant's motion for a trial order of dismissal. The Appellate Division affirmed the judgment (97 AD3d 1142 [2012]). Two Justices dissented, one of whom granted defendant leave to appeal to this Court.

Defendant does not challenge the sufficiency of the evidence establishing that he was the driver of the getaway car following the killing. Rather, defendant contends that there was insufficient evidence of a robbery, in the course of which the killing occurred. In order to prove that defendant was guilty of first-degree robbery, the prosecution had to produce sufficient evidence that defendant, or someone whom he intentionally aided, forcibly stole Thomas's property. According to defendant, there was insufficient proof that anything was stolen from Thomas. He suggests that Thomas might have completed his planned purchase of drugs before he was attacked, so that he no longer had $40,000 on his person.

The evidence that $40,000 was taken from Thomas is circumstantial. However, it is well established that "[t]he standard of appellate review in determining whether the evidence before the jury was legally sufficient to support a finding of guilt beyond a reasonable doubt is the same for circumstantial and non-circumstantial cases" (*People v Grassi*, 92 NY2d 695, 697 [1999]; *see also People v Cabey*, 85 NY2d 417, 421 [1995]). That standard, of course, is whether, viewing the evidence in the light most favorable to the prosecution, "there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 349 [2007], quoting *People v Acosta*, 80 NY2d 665, 672 [1993]; *see Jackson v Virginia*, 443 US 307, 319 [1979]).

A jury, faced with a case in which the proof of a particular charge, or element thereof, consists entirely of circumstantial evidence, "must exclude to a moral certainty every other reasonable hypothesis" (*People v Marin*, 65 NY2d 741, 742 [1985];

*see People v Way*, 59 NY2d 361, 365 [1983]; *People v Bearden*, 290 NY 478, 480 [1943]). But an appellate court's duty, when reviewing the jury's finding, is not to determine whether it would have reached the same conclusion as the jury with respect to a proposed innocent explanation of the evidence (*see Grassi*, 92 NY2d at 699 ["Defendant has offered myriad innocent explanations or inferences that could be drawn by a jury to counter this evidence. That, however, is not the legal standard by which this Court is bound for reviewing a sufficiency of the evidence appeal"]). Rather, the appellate court, viewing the evidence in the light most favorable to the People, must decide whether a jury could rationally have excluded innocent explanations of the evidence offered by the defendant and found each element of the crime proved beyond a reasonable doubt.

Applying this standard of review, we conclude that a rational jury could have inferred beyond a reasonable doubt that the $40,000 was stolen from Thomas by defendant and the men he aided. The jury heard evidence that Thomas was carrying $40,000, in a double-knotted Tops grocery bag, about an hour before he was killed; that defendant arranged for Thomas, whom he knew, to drive to the vicinity of defendant's father's house; that defendant fled the scene of Thomas's shooting, along with the gunman, in his father's car; that one of the men bent over Thomas's body briefly before getting into the car; and that a double-knotted Tops grocery bag was found, with its bottom torn out and contents removed, under the driver's armrest of the same car.

Although innocent explanations may be suggested, it was permissible for the jury to infer beyond a reasonable doubt from this evidence that defendant, and the men whom he aided, lured Thomas to an area where a getaway car would be readily available for the purpose of robbing him of the large quantity of cash he was carrying; that one of the men took the grocery bag from Thomas immediately after he was shot; that the men tore the bag open at the bottom because it was tied tightly at the top, and divided up the money in defendant's father's car; and that defendant thoughtlessly left the empty bag in the car when he reached his sister's home. It was not irrational to reject the theory that Thomas no longer had $40,000 on his person when he was attacked.

Defendant further argues that the Appellate Division erred in relying on Thomas's girlfriend's identification of the Tops bag as the same one she had knotted. Defendant insists that a

double-knotted Tops grocery bag is not visually distinctive, such that a person could no more identify it, as identical to one she had seen before, than she could recognize an individual penny or soda can as the same one she had seen before. We have no occasion to reach this issue, because the evidence was sufficient to prove robbery even without the witness's identification of the bag. That is, even if Thomas's girlfriend had not testified that the bag found in the car was the same one she had filled with cash, the fact that a grocery bag matching her *description* was found in the car was, alone, highly significant under the circumstances of this case. Given the testimony that Thomas was carrying a double-knotted Tops bag, stuffed with cash, shortly before he was killed, the evidence that a double-knotted Tops bag, emptied of its contents, was found in the car in which defendant fled from the scene, was sufficiently probative, without the identification by Thomas's girlfriend.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN (dissenting). Because the People failed to prove a crucial requisite element of felony murder and two counts of robbery in the first degree—that there was a forcible taking of property—I would find that the evidence was not legally sufficient to support the judgment of conviction. I therefore dissent.

"A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime," as relevant here, causes serious physical injury to a nonparticipant in the crime or is armed with a deadly weapon (Penal Law § 160.15 [1], [2]). In order to be guilty of felony murder, the People must prove that, "[a]cting either alone or with one or more other persons, he commit[ted] or attempt[ed] to commit [first degree] robbery . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant . . . cause[d] the death of a [nonparticipant]" (Penal Law § 125.25 [3]). Here, there was ample evidence that a homicide took place. The absence of any evidence of a forcible taking, however, is fatal to defendant's convictions of the above offenses.

Our standard of review for legal sufficiency is well settled. Viewing the evidence in the light most favorable to the People, we must determine whether "there is a valid line of reasoning

and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 349 [2007] [internal quotation marks and citations omitted]). Moreover, "the People are entitled to the benefit of every *reasonable* inference to be drawn from the evidence" (*People v Cintron*, 95 NY2d 329, 332 [2000] [emphasis added]).

Although the legal sufficiency standard is highly deferential to the verdict reached by the jury after trial, there must be some limit to the inferences we will consider permissible based on the established facts. Here, seven people witnessed the shooting or its immediate aftermath and not one of them testified to seeing anything taken from the victim. In fact, they affirmatively stated that they did not see anything in the shooter's hands other than the gun. It is true that the mail carrier saw the gunman bend over the body in the street, but he too maintained that he did not see the gunman do anything with his hands. Under these circumstances, the inference that a forcible taking occurred cannot reasonably be drawn.

The direct evidence does not merely have gaps that can be overcome by reasonable inferences drawn from the circumstantial evidence, but contradicts the People's case. In addition to the eyewitnesses who failed to observe any taking, it was not proved that the victim was still in possession of the money at the time he was shot. When he left the apartment at 1:00 p.m., he told his girlfriend that he would return in a half-hour. He was shot over an hour later, at a time when he had expected that the drug transaction would have been completed and he would have already used the cash as payment. We are not concerned with positing innocent explanations for the evidence. Rather, we are concerned with whether the jury's conclusion that there was a forcible taking of the victim's property was sufficiently supported by the evidence.

It appears the majority would agree the evidence of taking would be insufficient but for the knotted Tops supermarket bag. But this is unquestionably a very common local item. The inferential leap required to find that the presence of a plastic bag in defendant's car supports the conclusion that a forcible taking occurred is simply too great.

As County Court observed, the issue of whether there was legally sufficient evidence in this case is "an extremely difficult

and troubling'' one. Since there was a failure of proof as to an essential element of the crimes, I would reverse defendant's conviction and dismiss the indictment.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Chief Judge LIPPMAN dissents and votes to reverse in an opinion in which Judges RIVERA and ABDUS-SALAAM concur.

Order affirmed.