■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS TAPIA, Appellant. [56 NYS3d 78]—

Judgment, Supreme Court, Bronx County (Miriam Best, J.), rendered February 28, 2013, convicting defendant, after a jury trial, of attempted assault in the first degree, and sentencing him to a term of 5 years, with 3 years' postrelease supervision, affirmed.

Defendant contends that his conviction is legally insufficient and was against the weight of the evidence. Legal sufficiency and weight of evidence review are two standards of intermediate appellate review. Although related, "each requires a discrete analysis" (*People v Bleakley*, 69 NY2d 490, 495 [1987]). In reviewing whether a verdict is supported by legally sufficient evidence, we must determine whether, viewing the evidence in the light most favorable to the People, "there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 349 [2007] [internal quotation marks omitted]; *see also People v Gordon*, 23 NY3d 643, 649 [2014]; *People v Bleakley*, 69 NY2d at 495). "This deferential standard is employed because the courts' role on legal sufficiency review is simply to determine whether enough evidence has been presented so that the result-

would be improper to conclude that this case raise an issue of fact for the jury to resolve.

ing verdict was lawful" (*People v Acosta*, 80 NY2d 665, 672 [1993]). If that is satisfied, then the verdict will be upheld on a legal sufficiency basis (*People v Danielson*, 9 NY3d at 349; *People v Acosta*, 80 NY2d at 672).

To determine whether a verdict is supported by the weight of the evidence, however, our analysis is not limited to that legal test. Even if all the elements and necessary findings are supported by some credible evidence, we must examine the evidence further. "If based on all the credible evidence a different finding would not have been unreasonable," then we must "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Bleakley*, 69 NY2d at 495 [internal quotation marks omitted]). "Based on the weight of the credible evidence," we must then decide "whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (*People v Danielson*, 9 NY3d at 348). However, in performing this analysis, we must be "careful not to substitute [ourselves] for the jury. Great deference is accorded to the factfinder's opportunity to view the witnesses, hear the testimony and observe demeanor. Without question the differences between what the jury does and what the appellate court does in weighing evidence are delicately nuanced, but differences there are" (*People v Bleakley*, 69 NY2d at 495; *see also People v Kancharla*, 23 NY3d 294, 303 [2014]; *People v Romero*, 7 NY3d 633, 644 [2006]).

Here, defendant was charged with attempted assault in the first degree based on the use of a dangerous instrument under an acting-in-concert theory. The victim was unequivocal that he was attacked and beaten by two people. Several witnesses also told the police two people attacked the victim and pointed out defendant and a man named Torres as the two attackers. The police officers testified that they arrived on the scene while defendant was still in the process of beating the victim. Torres, for his part, was fidgeting with his waistband and running toward defendant and the victim. Both officers testified they observed defendant body slam the victim in the street, drag him between parked vehicles, and punch and kick him. They lost sight of defendant and the victim for "seconds" when they first got out of the patrol car because their vision was blocked by a van. One officer arrested Torres while the other officer physically pulled defendant off the victim as defendant was still kicking the victim in the head. While it is true that no blades, razors or other sharp instruments were found either on defendant or in the immediate area of the fight, and no one

saw defendant personally cut the victim, the officers candidly testified that they "wanted to close this investigation down" as they believed they had the perpetrators of the assault. They did not recover or analyze any of the broken glass in the area or check surveillance cameras that may have captured images of the fight as part of their investigation.

Nevertheless, viewing the evidence in a light most favorable to the People, the jury could have drawn a reasonable inference that defendant and Torres were acting in concert and one or the other caused the injuries to the victim's neck and face by using a sharp instrument at some point in the assault. Certainly, Officer Bello testified he observed defendant kicking the victim in the head while the victim was bleeding. The medical evidence, as the dissent notes, was unequivocal that the cuts sustained by the victim were consistent with being struck with a "sharp cutting instrument." Coupled with the fact that the victim was sure he was assaulted by two individuals, and the witnesses interviewed by the police at the scene identified defendant and Torres as the attackers, the jury could certainly reasonably infer that defendant and Torres were acting in concert, and that one or the other used a "sharp cutting instrument" to cause the victim's injuries. Based on the weight of the credible evidence, we find no basis for disturbing the jury's determination in finding defendant guilty beyond a reasonable doubt (*People v Danielson*, 9 NY3d at 348; *People v Bleakley*, 69 NY2d at 495).

The court properly denied defendant's motion to suppress a showup identification. The prompt, on-the-scene showup was conducted as part of an unbroken chain of events and was justified by the interest of prompt identification (*see People v Duuvon*, 77 NY2d 541, 545 [1991]; *People v McLean*, 143 AD3d 538 [1st Dept 2016], *lv denied* 28 NY3d 1148 [2017]). The circumstances of the showup, as a whole, did not create a likelihood of misidentification (*see Duuvon*, 77 NY2d at 545; *People v Sanabria*, 266 AD2d 41, 41 [1st Dept 1999], *lv denied* 94 NY2d 884 [2000]).

The court also properly exercised its discretion in admitting Officer Cosgrove's grand jury testimony as past recollection recorded. "The requirements for admission of a memorandum of a past recollection are generally stated to be that the witness observed the matter recorded, the recollection was fairly fresh when recorded or adopted, the witness can presently testify that the record correctly represented his knowledge and recollection when made, and the witness lacks sufficient present recollection of the recorded information" (*People v Taylor*, 80

NY2d 1, 8 [1992]). Here, the People laid a proper foundation for admission of this evidence as Cosgrove testified at trial that he had no present recollection of this incident, that his review of his grand jury minutes did not refresh his recollection, that his grand jury testimony represented his knowledge and recollection when made, and that he testified truthfully and accurately before the grand jury (*see People v Lewis*, 232 AD2d 239, 240 [1st Dept 1996], *lv denied* 89 NY2d 865 [1996]). Moreover, the admission of this evidence did not violate the Confrontation Clause since Cosgrove testified at trial and was subject to cross-examination (*People v Rahman*, 137 AD3d 523, 523-524 [1st Dept 2016], *lv denied* 28 NY3d 935 [2016]; *see also People v DiTommaso*, 127 AD3d 11, 15 [1st Dept 2015], *lv denied* 25 NY3d 1162 [2015]). In any event, there was no prejudice to defendant because it was entirely cumulative of Officer Bello's testimony (*see People v Holmes*, 291 AD2d 247, 248 [1st Dept 2002], *lv denied* 98 NY2d 676 [2002]).

By raising general objections, or by failing to object or to request further relief after the court delivered a curative instruction, defendant failed to preserve his present challenges to the prosecutor's summation, and we decline to review them in the interest of justice. As an alternative holding, we find no basis for reversal. Concur—Tom, J.P., Friedman and Sweeny, JJ.

Moskowitz and Kapnick, JJ., dissent in part in a memorandum by Kapnick, J., as follows: Defendant Carlos Tapia was charged and convicted after a jury trial with attempted assault in the first degree based on the use of a dangerous instrument under an acting-in-concert theory. Because the People failed to prove a crucial required element of this count, namely, that defendant or the other alleged attacker used a sharp instrument to cut the victim, I would find that the evidence was not legally sufficient to support the judgment of conviction.

I agree with the majority, that in assessing the legal sufficiency of the evidence, this Court, viewing the evidence in the light most favorable to the People, "must decide whether a jury could rationally have excluded innocent explanations of the evidence . . . and found each element of the crime proved beyond a reasonable doubt" (*People v Reed*, 22 NY3d 530, 535 [2014]). Put another way, we "must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and *as a matter of law satisfy the proof and burden requirements for every element of the crime charged*" (*People v Bleakley*, 69 NY2d 490, 495 [1987] [citations

omitted and emphasis added]). However, I disagree with the majority's determination that here "the jury could have drawn a reasonable inference that defendant and Torres were acting in concert and one or the other caused the injuries to the victim's neck and face by using a sharp instrument at some point in the assault."

The question before us on this appeal is whether the evidence sufficed to show that defendant wielded the dangerous instrument or acted in concert with another, presumably Mr. Torres, who wielded the dangerous instrument, and slashed the victim's face. As relevant here, a person is guilty of assault in the first degree when "[w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.10 [1]). "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00). To establish accessorial liability, or acting-in-concert, the People must prove beyond a reasonable doubt that the accused shared the "mental culpability of his companion or solicited, requested, commanded, importuned, or intentionally aided his companion" to cut the victim (*Matter of Paris M.*, 218 AD2d 554, 556 [1st Dept 1995]; *see also* Penal Law § 20.00). Here, there was no proof beyond a reasonable doubt that defendant cut the victim's face and neck or shared the intent of the individual, whether Mr. Torres or someone else, who did cut the victim (*see People v Rivera*, 176 AD2d 510, 511 [1st Dept 1991], *lv denied* 79 NY2d 863 [1992]).

While the victim's face was cut several times by a sharp object, there was no witness's testimony or any other direct evidence that defendant personally cut the victim. Rather, at trial, the victim testified repeatedly that he did not see who cut him or the weapon that was used to cut him. He further testified that he was face down on the ground at various times, indeed even covering his face and parts of his body while he was being punched and kicked; and, therefore, that he could not see who was attacking him or who cut him. Furthermore, the victim was unable to say when, exactly, during this attack he was cut, and only realized he had been cut when he felt blood running down his face. The majority seeks to cast the victim's testimony that he "was sure he was assaulted by two individuals," as unequivocal, however, this is incorrect. In fact, and as already noted, the victim said he could not see who assaulted him, and, moreover, he testified that it "could have

been . . . that several people had hit [him], because that's the way [he] felt." Additionally, the testimony by one of the arresting officers that two witnesses at the scene identified defendant and Torres as the attackers does not rise to the level of proving beyond a reasonable doubt that the two men were acting in concert or shared the requisite "mental culpability" for the harm done to the victim.

Morever, and as noted by the majority, the police did not recover any blades, razors or other sharp instruments from either defendant or the immediate area of the fight. The police also testified that they did not recover or analyze any of the broken glass from a shattered beer bottle on the sidewalk in front of the bar where the incident had occurred, or the pieces of broken glass scattered on the ground where defendant had been kicking the victim when the police arrived. Indeed, at trial the People called a doctor who testified regarding the injuries that the victim sustained. The doctor stated that the cuts were not consistent with someone falling onto broken glass or being struck with a fist, but rather, were consistent with being struck with a "sharp cutting instrument," such as a "knife, a box cutter" or a "piece of glass if it . . . had the right edge." Additionally, the People failed to put forth any evidence to suggest that defendant was aware that another attacker used a sharp object to cut the victim's face, nor was there evidence of any connection between defendant and the other alleged attacker, Mr. Torres. Indeed, one of the arresting officers testified that he never even asked the victim who had cut him. Moreover, there was testimony that there were approximately 15 to 20 people on the sidewalk exiting the bar at the time of the incident.

Therefore, in assessing the legal sufficiency of the evidence, I would find that the evidence failed to establish beyond a reasonable doubt, directly or by inference circumstantially, that defendant carried a dangerous instrument, cut the victim's face with it, or was aware that the other attacker intended to or was cutting the victim with such an instrument (see People v Campbell, 79 AD3d 624 [1st Dept 2010], lv denied 17 NY3d 793 [2011]; Matter of Paris M., 218 AD2d at 556; People v Rivera, 176 AD2d at 510-512).

However, defendant's own actions supported a conviction for attempted second-degree assault, based on the theory that, "[w]ith intent to cause serious physical injury to another person, he cause[d] such injury to such person" (Penal Law § 120.05 [1]). Accordingly, I would reduce the conviction to attempted assault in the second degree and reduce the sentence

to time served, with 1½ years' postrelease supervision (*see People v Campbell*, 79 AD3d at 624).