People v Simmons (2020 NY Slip Op 03350)





People v Simmons


2020 NY Slip Op 03350


Decided on June 12, 2020


Appellate Division, Fourth Department


Troutman, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 12, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., CARNI, LINDLEY, NEMOYER, AND TROUTMAN, JJ.


1019 KA 18-02434

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
MARZEL S. SIMMONS, DEFENDANT-APPELLANT. 






TODD G. MONAHAN, LITTLE FALLS, FOR DEFENDANT-APPELLANT.
KRISTYNA S. MILLS, DISTRICT ATTORNEY, WATERTOWN (ZAKARY I. WOODRUFF OF COUNSEL), FOR RESPONDENT. 


Troutman
 Appeal from a judgment of the Jefferson County Court (Kim H. Martusewicz, J.), rendered August 29, 2018. The judgment convicted defendant upon a jury verdict of criminal possession of a controlled substance in the third degree, promoting prison contraband in the first degree and aggravated unlicensed operation of a motor vehicle in the third degree. 
It is hereby ORDERED that the judgment so appealed from is modified as a matter of discretion in the interest of justice and on the law by reducing the conviction of promoting prison contraband in the first degree (Penal Law § 205.25 [1]) under count four of the indictment to promoting prison contraband in the second degree (§ 205.20 [1]) and vacating the sentence imposed on that count, and as modified the judgment is affirmed and the matter is remitted to Jefferson County Court for sentencing on that conviction.
Opinion by Troutman, J.:
On appeal from a judgment convicting him upon a jury verdict of, inter alia, criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) and promoting prison contraband in the first degree (§ 205.25 [1]), defendant contends that the evidence is legally insufficient to establish that the three baggies of cocaine found on his person constituted dangerous contraband. We agree. Although defendant failed to preserve that contention for our review (see People v Hines, 97 NY2d 56, 61 [2001], rearg denied 97 NY2d 678 [2001]), we exercise our power to review it as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]). We note, in any event, that we must " necessarily review the evidence adduced as to each of the elements of the crime[] in the context of our review of defendant's challenge regarding the weight of the evidence' " (People v Cartagena, 149 AD3d 1518, 1518 [4th Dept 2017], lv denied 29 NY3d 1124 [2017], reconsideration denied 30 NY3d 1018 [2017]).
"A person is guilty of promoting prison contraband in the first degree when . . . [that person] knowingly and unlawfully introduces any dangerous contraband into a detention facility" (Penal Law § 205.25 [1]). "Dangerous contraband" is defined as any contraband that is "capable of such use as may endanger the safety or security of a detention facility or any person therein" (§ 205.00 [4]). "[T]he test for determining whether an item is dangerous contraband is whether its particular characteristics are such that there is a substantial probability that the item will be used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility's institutional safety or security" (People v Finley, 10 NY3d 647, 657 [2008]). " [W]eapons, tools, explosives and similar articles likely to facilitate escape or cause disorder, damage or physical injury are examples of dangerous contraband,' " whereas an " alcoholic beverage is an example of [ordinary] contraband' " (id. at 656-657). Drugs, unlike weapons, are not inherently dangerous, and thus general penological concerns about the drug possessed that "are not addressed to the specific use and effects of the particular drug are insufficient to meet the definition of dangerous contraband" (People v Flagg, 167 AD3d 165, 169 [4th Dept 2018]).
In reviewing a defendant's challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the People and ask whether "there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Acosta, 80 NY2d 665, 672 [1993] [internal quotation marks omitted]; see People v Danielson, 9 NY3d 342, 349 [2007]). "A sufficiency inquiry requires a court to marshal competent facts most favorable to the People and determine whether, as a matter of law, a jury could logically conclude that the People sustained its burden of proof" (Danielson, 9 NY3d at 349; see People v Li, 34 NY3d 357, 363 [2019]). In other words, our role "is simply to determine whether enough evidence has been presented so that the resulting verdict was lawful" (Acosta, 80 NY2d at 672; see Li, 34 NY3d at 363). Here, the only evidence of the dangerousness of the cocaine is the testimony of one of the correction officers who strip-searched defendant: "Drugs in the facility can cause overdoses, fights and trips to the hospital that are unnecessary." There is no material distinction between that testimony and the evidence that we found to be legally insufficient in Flagg, and thus we conclude that the evidence is legally insufficient to establish that the cocaine was dangerous contraband (see 167 AD3d at 168).
Central to our dissenting colleague's analysis is a distinction between narcotic and non-narcotic controlled substances. The unstated premise is that cocaine is classified as a narcotic because it is inherently dangerous. We respectfully disagree with that premise. Cocaine may be unhealthy, but it is not a narcotic, at least not from a scientific, medical, or pharmacological viewpoint (see Carl B. Schultz, Note, Statutory Classification of Cocaine as a Narcotic: An Illogical Anachronism, 9 Am J L & Med 225, 226-227 [1983]). Cocaine is classified by law as a narcotic for economic reasons, not because of any specific danger to users (see People v McCarty, 86 Ill 2d 247, 255, 427 NE2d 147, 151 [1981] ["Cocaine and heroin are by far the most expensive and most profitable of the illicit drugs . . . (O)ne of the primary purposes of the Act is to penalize most heavily the illicit traffickers or profiteers of controlled substances' . . . The State urges that these facts provide a rational basis for treating cocaine more severely than . . . (other) nonnarcotic(s)"]; see generally People v Broadie, 37 NY2d 100, 112 [1975], cert denied 423 US 950 [1975]).
Nevertheless, most Americans still think of all illegal drugs as "narcotics," even though narcotics are properly defined in a pharmacological sense as opium, its derivatives such as heroin, and its synthetic substitutes such as fentanyl (see United States Drug Enforcement Administration, http://www.dea.gov/taxonomy/term/331 [last accessed March 27, 2020]). " Old drug myths apparently die remarkably hard' " (Schultz at 230). Americans have all kinds of ideas about what certain drugs are and what those drugs do. Those ideas are informed by the news, television, Hollywood films, personal experience, politics, parental advice, and the anecdotes of friends. We must be careful not to leave determinations of dangerousness to the preconceptions of the fact-finder. That is why evidence of the "specific use and effects of the particular drug" must be required (Flagg, 167 AD3d at 169).
Our dissenting colleague highlights testimony that correction officers were concerned that defendant might swallow the cocaine, but that serves only to underscore our point. It is common knowledge that drugs or alcohol, if consumed, have the potential to cause overdose resulting in death. Certainly, a person can die from an excessive dose of cocaine. But, here, the People offered no evidence of the specific quantity of the cocaine found on defendant's person, much less the effect that cocaine in such a quantity would have on defendant's health. Quite the contrary. The record casts doubt on whether the cocaine would have had any effect at all on defendant's health because the cocaine was bagged and not necessarily in consumable form. How dangerous would it have been for defendant to have swallowed cocaine in the quantity and the form that the police recovered? How likely is it that he would have suffered a medical emergency? We cannot say.
One last point is worth emphasizing. Anyone caught possessing cocaine in prison is already subject to criminal liability and rather severe penalties for possession under Penal Law article 220. A charge of promoting prison contraband in the first degree under those circumstances is largely superfluous. In contrast, such a charge is truly important in cases involving weapons. Outside prison, the possession of blades, knives, and so forth is generally lawful. In prison, they have a more pernicious use—to kill.
We therefore agree with defendant that the evidence is legally insufficient to support a conviction of promoting prison contraband in the first degree. We nevertheless conclude that the evidence is legally sufficient to support a conviction of the lesser included offense of promoting prison contraband in the second degree (Penal Law § 205.20 [1]). Accordingly, we modify the judgment by reducing the conviction of promoting prison contraband in the first degree under count four of the indictment to promoting prison contraband in the second degree (see CPL 470.15 [2] [a]) and vacating the sentence imposed on that count, and we remit the matter to County Court for sentencing on that conviction (see Flagg, 167 AD3d at 170).
In light of our determination, we do not address defendant's contention that the court erred in failing to charge promoting prison contraband in the second degree as a lesser included offense. We address defendant's remaining contentions below.
Defendant contends that the verdict with respect to the count of promoting prison contraband in the first degree is against the weight of the evidence inasmuch as the People failed to establish his "intent" to introduce contraband into a detention facility. We reject that contention because intent is not an element of promoting prison contraband in either degree (see Penal Law §§ 205.20, 205.25).
Defendant further contends that the court committed reversible error in failing to assign him new counsel because his assigned counsel had a conflict of interest, counsel's office having previously represented a prosecution witness. We reject that contention. Although defense counsel had a potential conflict of interest, defendant failed to establish that "his defense was in fact affected by the operation of the conflict of interest" (People v Pandajis, 147 AD3d 1469, 1470 [4th Dept 2017], lv denied 29 NY3d 1084 [2017] [internal quotation marks omitted]; see People v Alicea, 61 NY2d 23, 31 [1983]). We note that the witness in question testified exclusively about matters related to counts of the indictment with respect to which defendant was acquitted.
We reject defendant's contention that certain evidence was admitted in evidence in violation of People v Molineux (168 NY 264 [1901]). The evidence tended to prove that defendant sold drugs within the two weeks before the cocaine was found in his possession, and thus the evidence was probative of defendant's intent to sell (see People v Brown, 148 AD3d 1547, 1548 [4th Dept 2017], lv denied 29 NY3d 1090 [2017]; People v Morman, 145 AD3d 1435, 1437 [4th Dept 2016], lv denied 29 NY3d 999 [2017]).
Defendant's challenge to the trial testimony of a police detective is not preserved for our review because his objections to that testimony were general in nature (see People v Wright, 34 AD3d 1274, 1275 [4th Dept 2006], lv denied 8 NY3d 886 [2007]). We decline to exercise our power to review that challenge as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Finally, we note that the certificate of conviction incorrectly reflects that defendant was convicted of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]), and it must therefore be amended to reflect that he was convicted of criminal possession of a controlled substance in the third degree (§ 220.16 [1]; see People v Yates, 173 AD3d 1849, 1850 [4th Dept 2019]).
Nemoyer, J., concurs with Troutman, J.; Carni, J., concurs in the result in the following opinion in which Lindley, J., concurs: We concur with Justices Troutman and NeMoyer that the People failed to introduce sufficient evidence to establish that the cocaine possessed by defendant was dangerous contraband (see People v Flagg, 167 AD3d 165, 168 [4th Dept 2018]). In reaching that conclusion, we do not address or rely on a distinction between narcotic and non-narcotic controlled substances or the characteristics or dangerousness of cocaine generally; we rely instead on the insufficiency of the People's proof of dangerousness in this specific case. We agree with the analysis by Justices Troutman and NeMoyer of each of defendant's remaining contentions. Peradotto, J.P., dissents in part and votes to affirm in the following opinion: I respectfully dissent in part and would affirm the judgment in its entirety. Defendant failed to preserve for our review his contention that the evidence is legally insufficient to establish that the [*2]cocaine found on his person constituted dangerous contraband, as required for a conviction of promoting prison contraband in the first degree (Penal Law § 205.25 [1]; see People v Hines, 97 NY2d 56, 61 [2001], rearg denied 97 NY2d 678 [2001]), and I would not review that contention as a matter of discretion in the interest of justice. If I were to review defendant's contention, I would reject it on the merits for the reasons that follow.
"Dangerous contraband" is defined as "contraband which is capable of such use as may endanger the safety or security of a detention facility or any person therein" (Penal Law § 205.00 [4]). "[T]he test for determining whether an item is dangerous contraband is whether its particular characteristics are such that there is a substantial probability that the item will be used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility's institutional safety or security" (People v Finley, 10 NY3d 647, 657 [2008]). "Drugs, unlike other contraband such as weapons, are not inherently dangerous and the dangerousness is not apparent from the nature of the item," and thus general penological concerns about the drug possessed that "are not addressed to the specific use and effects of the particular drug are insufficient to meet the definition of dangerous contraband" (People v Flagg, 167 AD3d 165, 169 [4th Dept 2018]).
Here, "[v]iewing the evidence in the light most favorable to the People, and giving them the benefit of every reasonable inference," as I am obligated to do (People v Bay, 67 NY2d 787, 788 [1986]; see People v Delamota, 18 NY3d 107, 113 [2011]), I conclude that the evidence is "legally sufficient to establish that the cocaine discovered during a search of defendant's [person] constituted dangerous contraband" (People v Louder, 74 AD3d 1845, 1846 [4th Dept 2010]). The evidence established that defendant was found with, inter alia, three baggies containing cocaine, which, like heroin, is classified by law as a narcotic drug (see Penal Law § 220.00 [7]; Public Health Law § 3306 [Schedule I (c) (11)]; [Schedule II (b) (4)]; see generally Finley, 10 NY3d at 657; People v Harmon, 173 AD3d 502, 502 [1st Dept 2019], lv denied 34 NY3d 951 [2019]; People v Watson, 162 AD2d 1015, 1015 [4th Dept 1990], appeal dismissed 77 NY2d 857 [1991]). The plurality's interpretation of the pharmacological and societal views of cocaine and the relevance thereof, if any, to the analysis in this case improperly relies on matters not briefed by the parties on this appeal (see generally Misicki v Caradonna, 12 NY3d 511, 519 [2009]). Indeed, defendant does not present any such argument and, instead, repeatedly refers to cocaine in a manner consistent with its legal classification, i.e., as a narcotic.
The evidence—considered in its entirety—also established that the correction officers who conducted a strip search of defendant feared that he would swallow the drugs in his possession, which they explained was conduct that, in addition to causing the destruction of evidence, would present a medical concern and could harm defendant. Indeed, the testimony demonstrated that defendant, instead of complying with certain commands, reached for his buttocks area where he had secreted the drugs and then quickly brought his hand to his mouth, at which point the correction officers tried to prevent him from swallowing the drugs; although nothing was found in his clenched fist, the drugs were eventually retrieved from his buttocks area. Moreover, the evidence was "focus[ed] on the dangerousness of the use of the particular drug at issue" (Flagg, 167 AD3d at 169) inasmuch as a correction officer explained that ingestion of a drug such as cocaine can cause an overdose (see Harmon, 173 AD3d at 502). While the plurality poses several speculative questions with respect to the dangerousness of the cocaine to defendant, the legal question that must be answered is whether "there is any valid line of reasoning and permissible inferences that could lead a rational person to conclude that every element of the charged crime has been proven beyond a reasonable doubt" (Delamota, 18 NY3d at 113). As this Court previously held upon review of similar proof in Louder (74 AD3d at 1846)—which neither the plurality nor the concurrence addresses, thereby apparently distinguishing or overturning it sub silentio—the evidence here permitted the jury to rationally conclude that the cocaine discovered during the search of defendant constituted dangerous contraband.
Entered: June 12, 2020
Mark W. Bennett
Clerk of the Court