Appeal by the defendant from a judgment of the Supreme Court, Kings County (Gary, J.), rendered September 13, 2013, convicting him of attempted murder in the second degree and assault in the first degree, upon a jury verdict, and imposing sentence.
 

 Ordered that the judgment is reversed, as a matter of discretion in the interest of justice, and a new trial is ordered.
 

 The victim, Christian Rivera, his friend, Jose Torres, and Torres’ girlfriend, Alexandra Schwoerer, were walking along Lorimer Street in Williamsburg, Brooklyn, on the evening of December 5, 2011, when Rivera was beckoned by a stranger who was standing on the top row of nearby bleachers, with approximately five to eight other men in the vicinity. The stranger displayed a hand gesture used by members of the Latin Kings gang and asked Rivera if he “was king.” While Rivera saw the stranger’s face, he did not get “a clear look” at it. However, he described the stranger as a Hispanic man wearing a black waist-length jacket, and provided other details regarding the individual’s height and clothing that were consistent with the defendant’s appearance on the date of the incident.
 

 When Rivera, himself a former member of the Latin Kings, responded by going up to the man with the waist-length jacket to shake his hand, the man punched Rivera in the face three times. Another man wearing a black hooded sweater and a fitted black wool Yankees cap then approached Rivera from behind, and together the two men slammed Rivera to the ground. Rivera called out to Torres for help, and Torres began fighting with the man with the waist-length jacket. Torres was soon overpowered, however, when one or more others joined in the fight against him. The man with the waist-length jacket then returned to Rivera, holding him down by the shoulders while the man with the hooded sweater stabbed Rivera repeatedly.
 

 At the trial, neither Rivera nor Schwoerer identified the defendant in court. Schwoerer, who was standing approximately 20 feet from where the incident occurred, explained that she could not get a clear view of the face of the individual who was holding Rivera down. However, she described the perpetrator as a Hispanic man wearing a black waist-length jacket, and provided a general description of the perpetrator’s height and age that was consistent with the description given by Rivera, as well as the defendant’s appearance on the date of the incident. Schwoerer also testified that, after the fight, the man who had been holding Rivera down picked up a red New Jersey Devils hat, which belonged to Torres, and ran away with it. Schwoerer knew that the hat belonged to Torres because no one else was wearing a red New Jersey Devils hat that day. Moreover, the hat was distinctive in that it was brand new and still had its original sticker on it, Rivera having bought it just two days earlier as a gift for Torres.
 

 Within minutes of the attack, the police stopped the defendant approximately five blocks away. He was wearing a black waist-length jacket and a red New Jersey Devils hat with a sticker on it.
 

 The defendant himself, through the testimony of two of his friends, offered direct evidence not only placing him at the scene of the crime, but also participating in a fistfight with a man wearing a red hat. In addition, the defendant’s grand jury-testimony, which was read to the jury as part of the People’s case, also placed him at the scene of the crime. Among other things, the defendant testified before the grand jury that he was attacked from behind by a man wearing a red hat, and that, after the fight, he mistakenly picked up the red hat instead of his own. The defendant and his two friends denied that the defendant participated in the attack on Rivera.
 

 After the jury trial, the defendant was convicted of attempted murder in the second degree and assault in the first degree.
 

 The defendant’s challenge to the legal sufficiency of the evidence supporting his convictions is unpreserved for appellate review (see CPL 470.05 [2]; People v Hawkins, 11 NY3d 484, 492 [2008]). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621 [1983]), we find that it was legally sufficient to establish the defendant’s guilt beyond a reasonable doubt.
 

 Moreover, upon the exercise of our factual review power (see CPL 470.15 [5]), we are satisfied that the verdict of guilt was not against the weight of the evidence. While an acquittal would not have been unreasonable in this largely circumstantial case, particularly in light of evidence that more than one individual participated in the fight against Torres, upon weighing the conflicting testimony, reviewing the rational inferences that may be drawn from the evidence, and evaluating the strength of such conclusions, the weight of the credible evidence supports the jury’s finding of guilt beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 348 [2007]), and there is no basis to overturn the credibility determination of the jury, which had the opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Fisher, 116 AD3d 968, 969 [2014]).
 

 Nevertheless, because the defendant was deprived of his constitutional right to confront the witnesses against him, the judgment of conviction must be reversed and a new trial ordered.
 

 When the trial began, both sides expected Torres, who had positively identified the defendant during a show-up procedure conducted within minutes of the crime, to testify for the prosecution. Two of the first prosecution witnesses were Police Officer Henry Yanez and Sergeant Steven Cameron. Cameron testified that he spoke with Torres at the scene and instructed him to accompany him in canvassing the area. Cameron obtained a description of the perpetrators from Torres and broadcast it over the radio. Shortly thereafter, Cameron received word from Yanez that an individual matching the description had been stopped. That individual was the defendant. Cameron drove Torres to the location of the stop and, with the defendant still wearing the red hat, asked Torres whether anyone “look [ed] familiar.” Torres responded “instantaneously,” and Cameron transmitted a message to Yanez, who immediately placed the defendant under arrest.
 

 Two days after the arresting officers’ testimony, the People informed the court that Torres could not be located and would not be produced as a witness. Defense counsel then moved for a mistrial, alleging a “Trowbridge violation,” but without specifically alleging any violation of the defendant’s right to confront witnesses under the Sixth Amendment to the United States Constitution (see Crawford v Washington, 541 US 36 [2004]; People v Fairweather, 69 AD3d 876 [2010]). The motion was denied.
 

 The record reveals, however, that the trial court understood full well the risk that the jurors, based on the detailed testimony of the arresting officers, might conclude that Torres—now a nontestifying witness—had identified the defendant as one of the perpetrators. Before summations, the court expressly warned both sides: “if I find that either of you are making any representation to this jury that Mr. Jose Torres made an identification of the defendant you will regret it.” Later, the court again warned the prosecutor in the following terms: “[S]ince Jose Torres did not testify, there is no way you are going to argue to this jury or infer to this jury in any way, shape or form that Jose Torres made an identification. Because that’s clearly the only import of your subsequent questioning about what did you do afterwards? Of course, the defendant got arrested. So it doesn’t take a rocket scientist to understand Jose Torres obviously identified something in this case.”
 

 Both sides followed the court’s instructions during summations. However, during the jury’s deliberations, the jurors specifically requested a readback of Cameron’s testimony regarding “what Jose Torres told him relating to the perpetrator’s identification and what happened when he identified the defendant.” The requested testimony was read to the jury without any limiting instruction.
 

 Under the unusual circumstances presented, the jury’s note demonstrates that the risk foreshadowed by the trial court had materialized, namely, that the jury had inferred from the arresting officers’ testimony that Torres had identified the defendant as one of Rivera’s attackers. Although neither side can be faulted for the introduction of the arresting officers’ testimony at a time when everyone believed in good faith that Torres would testify, once it became clear that Torres would not be produced as a witness, the arresting officers’ testimonial hearsay regarding the information conveyed to them by Torres violated the defendant’s constitutional right to confront the witnesses against him (see People v Fairweather, 69 AD3d at 877; People v Berry, 49 AD3d 888, 889 [2008]).
 

 Although the issue is unpreserved for appellate review, we reach it in the exercise of our interest of justice jurisdiction (see CPL 470.15 [6] [a]). Because the evidence of the defendant’s guilt was far from overwhelming, and the jurors’ note suggests that their belief that Torres had identified the defendant may have contributed to the verdict of guilt, we reverse the judgment of conviction and order a new trial.
 

 In light of our determination, we need not reach the defendant’s remaining contentions.
 

 Chambers, J.P., Hall, Maltese and Barros, JJ., concur.