People v Romualdo (2020 NY Slip Op 06559)





People v Romualdo


2020 NY Slip Op 06559


Decided on November 12, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 12, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
SHERI S. ROMAN
JEFFREY A. COHEN
LINDA CHRISTOPHER, JJ.


2017-11195
 (Ind. No. 1054/16)

[*1]The People of the State of New York, respondent,
v
Fernando Romualdo, appellant.


Laurette D. Mulry, Riverhead, NY (Felice B. Milani of counsel), for appellant.
Timothy D. Sini, District Attorney, Riverhead, NY (Grazia DiVincenzo and Marion Tang of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the County Court, Suffolk County (Barbara Kahn, J.), rendered September 27, 2017, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law and on the facts, the indictment is dismissed, and the matter is remitted to the Supreme Court, Suffolk County, for further proceedings consistent with CPL 160.50.
On the morning of October 3, 2013, the 23-year-old victim, who had a history of drug use, was found dead in a wooded area known as Froehlich Farms, in Suffolk County. The victim's injuries, as well as the condition in which her body was found, indicated that she had been sexually assaulted and killed by strangulation within 12 hours to a day before her body was found. More than two years after her death, the defendant was charged with murder in the second degree after his DNA profile was matched to a single source partial profile generated from various swab samples taken as part of a sexual assault kit performed on the victim.
At the trial, the People presented no evidence placing the defendant at or near the scene of the crime, or linking him in any way to the victim, during the critical time frame in which the murder was believed to have occurred. Nor did the People offer any evidence showing that the sexual contact between the defendant and the victim occurred at or near the time of the murder. At most, the DNA evidence established, beyond a reasonable doubt, that the defendant had sexual contact with the victim at some unspecified time and place.
Viewing the trial evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally insufficient to establish, directly or circumstantially, that the defendant, on or about October 3, 2013, intentionally caused the victim's death. Under these circumstances, the defendant's motion for a trial order of dismissal should have been granted, and the indictment dismissed.
For the same reasons, upon the exercise of our factual review power (see CPL 470.15[5]), we find that the verdict of guilt was against the weight of the evidence (see People v [*2]Danielson, 9 NY3d 342, 348-349; People v Romero, 7 NY3d 633; People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495).
In light of our determination, we need not reach the defendant's remaining contentions.
CHAMBERS, J.P., COHEN and CHRISTOPHER, JJ., concur.
ROMAN, J., dissents, and votes to affirm the judgment, with the following memorandum:
I respectfully dissent, as I find that the defendant's conviction of murder in the second degree was supported by legally sufficient evidence and was not against the weight of the evidence.
On October 3, 2013, two men reported to the police that they had discovered a body in a nature preserve in the Town of Huntington. Police responded to the location and found the lifeless body of the 23-year-old female victim lying face down in the brush. Her pants had been pulled down to her knees, and her shirt had been pulled up.
An autopsy performed by Odette Hall of the Suffolk County Medical Examiner's Office revealed that the victim had been dead for at least 12 hours up to about a day before her body was found, and that the cause of death was neck compression. The hyoid bone in the victim's neck was fractured and there were several contusions and hemorrhages on her neck. There was also evidence of blunt force trauma to the victim's head, arms, legs, and torso. Additionally, the victim had contusions on her thighs adjacent to her vagina and to her genitals, including a contusion on the lateral wall of the vagina. Dr. Hall determined that all of these injuries occurred around the time of the victim's death, or within a day or two thereof.
A sexual assault examination was also performed on the victim's body at the Medical Examiner's office, and testing of swabs taken during that examination revealed the presence of semen on the victim's cervix, vulva, and perianal area. A partial unknown DNA profile obtained from the swab taken of the victim's vulva matched the partial DNA profiles obtained from the perianal swab, and those profiles all originated from the same male individual. In 2015, the Suffolk County Crime Laboratory obtained the defendant's known DNA profile. The defendant's DNA profile was compared to the unknown partial DNA profiles that were developed from the vulvar and perianal swabs taken from the victim's body, and it was determined that the profiles matched each other. Additionally, with respect to the sperm fraction of the cervical swab, testing performed at Cellmark Laboratory indicated that neither the defendant nor anyone in his male paternal lineage could be excluded as contributors to the sample.
In December 2015, a detective interviewed the defendant. He told the defendant that several people had made allegations of a sexual nature against him. The detective showed the defendant photographs of women, including the victim, and asked him if he recognized any of them. The defendant denied recognizing anyone in the photographs. In response to questioning, the defendant told the detective that he had only had three sexual partners since 2007, which included his girlfriend, his former girlfriend in 2009, and another woman from Florida. When the detective told the defendant that the victim was dead and that she had the defendant's DNA on her, the defendant maintained that he did not know how that could have happened.
At trial, the defendant did not present any witnesses. The defendant's counsel, in his opening statement and during summation, suggested that while his client may have had sexual contact with the victim, he did not kill her. Following the trial, the jury found the defendant guilty of murder in the second degree (Penal Law § 125.25[1]).
I respectfully disagree with the conclusion of my colleagues in the majority that the evidence was legally insufficient to support the defendant's conviction of murder in the second degree, and that the verdict of guilt was against the weight of the evidence.
In reviewing a legal sufficiency claim, the court must view the facts in a light most favorable to the People to determine "'whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt'" (People v Acosta, 80 NY2d 665, 672, quoting People v Steinberg, 79 NY2d 673, 682). "A sufficiency inquiry requires a court to marshal competent facts most favorable to the People and determine whether, as a matter of law, a jury could logically conclude that the People sustained its burden of proof" (People v Danielson, 9 NY3d 342, 349; see People v Li, 34 NY3d 357, 363; People v Garland, 32 NY3d 1094, 1095). "This deferential standard is employed because the courts' role on legal sufficiency review is simply to determine whether enough evidence has been presented so that the resulting verdict was lawful" (People v Acosta, 80 NY2d at 672; see People v Li, 34 NY3d at 363). "Importantly, '[i]n determining the legal sufficiency of the evidence for a criminal conviction we indulge all reasonable inferences in the People's favor, mindful that a jury faced with conflicting evidence may accept some and reject other items of evidence'" (People v Li, 34 NY3d at 364, quoting People v Carrel, 99 NY2d 546, 547 [internal quotation marks omitted]).
To convict the defendant of murder in the second degree, the People were required to prove that "[w]ith intent to cause the death of [the victim]," the defendant caused the death of such person (Penal Law § 125.25[1]). The evidence adduced at trial demonstrated that the 23-year-old victim died of neck compression, and that she sustained numerous contusions and hemorrhages to her head and arms as a result of blunt force trauma. Furthermore, the evidence reflected that the victim was sexually assaulted at the time of murder. In this regard, the evidence showed that the victim sustained contusions to her thighs adjacent to her vagina and to her genitals, including a contusion to the lateral wall of the vagina. Hall determined that all of the injuries, including those to the victim's genitals, occurred around the time of the victim's death, and, importantly, the victim's body was discovered lying face down with her pants pulled down and her shirt pulled up. Photographs depicting the condition of the victim's body at the crime scene were admitted into evidence at trial.
The evidence also was legally sufficient to establish the defendant's identity as the perpetrator of the crime. The forensic evidence showed that the defendant's semen was on the victim's vulva and perianal area, as well as inside her cervix. There was no evidence of any other person's semen on the victim's body. Additionally, the defendant, who lived close to where the victim's body was discovered, gave a false statement to the police that he never had sex with the victim and had never seen her, which was contradicted by the DNA evidence. In my view, the foregoing evidence was legally sufficient to support the defendant's conviction of murder in the second degree (Penal Law § 125.25[1]; see People v Fleming, 141 AD3d 408, 409).
Furthermore, I am satisfied that the verdict of guilt was not against the weight of the evidence (see CPL 470.15[5]). "[W]eight of the evidence review requires a court first to determine whether an acquittal would not have been unreasonable. If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (People v Danielson, 9 NY3d at 348; see People v Cruz, 176 AD3d 852, 855). Here, although an acquittal on the charge of murder in the second degree would not have been unreasonable, upon reviewing the rational inferences that may be drawn from the evidence, and evaluating the strength of such conclusions, I find that the weight of the credible evidence supports the jury's finding of guilt beyond a reasonable doubt (see People v Danielson, 9 NY3d at 348; see generally People v Tavarez, 155 AD3d 783, 785).
The defendant's remaining contentions are without merit.
Accordingly, I would affirm the defendant's conviction.
ENTER:
Aprilanne Agostino
Clerk of the Court