# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 21
The People &c.,
      Appellant,
    v.
Jonaiki Martinez Estrella,
      Respondent.

Reva G. Phillips, for appellant.
Steven N. Feinman, for respondent.

TROUTMAN, J.:

The People appeal from an order of the Appellate Division that vacated defendant's conviction of murder in the first degree after concluding that two elements of that crime were not proven by legally sufficient evidence. Although we agree with the People that

- 1 -

the Appellate Division erred in concluding that one element of that crime was not proven, we agree with the Appellate Division that a second element was not satisfied. We therefore affirm.

I.

This case arises from hostilities that developed among factions of the Bronx Trinitarios gang. On June 20, 2018, the leaders of two of those factions—Los Sures and the Bad Boys—directed their members to seek out and attack members of another group, the Sunsets. Defendant was a probationary member of Los Sures who set out with other gang members to find and attack Sunset members. The group came across 15-year-old Lesandro Guzman-Feliz, otherwise known as Junior. Mistakenly believing Junior to be a Sunset member, the group chased him, dragging him from a bodega and stabbing him with knives and a machete. Defendant delivered the fatal blow by stabbing Junior in the neck with a knife, after which Junior lived for at least several minutes as he struggled to make his way to a hospital two blocks away before he bled to death. The entire attack was captured on surveillance video.

Defendant was tried with four other codefendants and was convicted of first-degree murder pursuant to Penal Law § 125.27 (1) (a) (x), among other crimes. On appeal, the Appellate Division unanimously modified by vacating defendant's conviction of first-degree murder and dismissing that count of the indictment, and otherwise affirmed (*People v Estrella*, 214 AD3d 459 [1st Dept 2023]). The Court concluded that two of the necessary elements of first-degree murder were not satisfied by legally sufficient evidence. First, the Appellate Division held that "defendant and his accomplices did not engage in a 'course of

conduct' involving the intentional infliction of extreme physical pain" (*id.* at 460).  Second, the Court held that "the record also fails to support the conclusion that defendant 'relished' or 'evidenced a sense of pleasure in the infliction of extreme physical pain' " (*id.*).  The Appellate Division rejected defendant's contention that his conviction of second-degree murder was not supported by legally sufficient evidence (*see id.*).

A Judge of this Court granted the People's application for leave to appeal and denied defendant's application (40 NY3d 934 [2023]).

## II.

"A verdict is legally sufficient when, viewing the facts in a light most favorable to the People, 'there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt' " (*People v Danielson*, 9 NY3d 342, 349 [2007], quoting *People v Acosta*, 80 NY2d 665, 672 [1993]).  "A sufficiency inquiry requires a court to marshal competent facts most favorable to the People and determine whether, as a matter of law, a jury could logically conclude that the People sustained its burden of proof" (*id.*)  " 'This deferential standard is employed because the courts' role on legal sufficiency review is simply to determine whether enough evidence has been presented so that the resulting verdict was lawful' " (*People v Li*, 34 NY3d 357, 363 [2019], quoting *Acosta*, 80 NY2d at 672).

Penal Law § 125.27 (1) (a) (x) provides that a defendant who kills another commits first-degree murder when, with intent to kill:

> "defendant acted in an especially cruel and wanton manner
> pursuant to a course of conduct intended to inflict and inflicting
> torture upon the victim prior to the victim's death. As used in

this subparagraph, 'torture' means the intentional and depraved infliction of extreme physical pain; 'depraved' means the defendant relished the infliction of extreme physical pain upon the victim evidencing debasement or perversion or that the defendant evidenced a sense of pleasure in the infliction of extreme physical pain" (Penal Law § 125.27 [1] [a] [x]).[1]

This "torture murder" subdivision therefore required the People to prove that defendant and his accomplices acted pursuant to a "course of conduct" intended to inflict and which in fact inflicted extreme physical pain upon Junior before his death.[2] The People were also required to prove that defendant himself "relished" the infliction of extreme physical pain upon Junior "evidencing debasement or perversion," or that defendant "evidenced a sense of pleasure" at inflicting extreme physical pain upon Junior (*id.*). The Appellate Division concluded that neither of these elements were established by legally sufficient evidence (*see Estrella*, 214 AD3d at 460).

A.

Penal Law § 125.27 (1) (a) (x) does not define the term "course of conduct." However, other Penal Law statutes use the same phrase and are thus instructive. In the context of interpreting the harassment statute, we have held that a single, isolated act is

---

[1] This subdivision was added to the statute in 1995 as part of an effort to revive the death penalty in New York state (*see* Governor's Approval Mem, Bill Jacket, L 1995, ch 1 at 5-10). If convicted of first-degree murder, defendants are subjected to heightened punishments "reserved for the most heinous crimes and the most hardened offenders" (Mem of Assembly Codes Comm, Bill Jacket, L 1995, ch 1 at 25).

[2] There is no dispute that accomplice liability applies to a charge under Penal Law § 125.27 (1) (a) (x) (*see People v Mateo*, 2 NY3d 383, 405-406 [2004], *cert denied* 542 US 946 [2004]).

insufficient to establish a course of conduct (*see People v Valerio*, 60 NY2d 669, 670 [1983]; *People v Wood*, 59 NY2d 811, 812 [1983]).  Similarly, the Appellate Division has held that the "course of conduct" element necessary to convict defendant of third-degree stalking requires "a series of acts 'evidencing a continuity of purpose' " (*People v Ubbink*, 120 AD3d 1574, 1575-1576 [4th Dept 2014], quoting *People v Payton*, 161 Misc 2d 170, 174 [Crim Ct, Kings County 1994]).  We agree with defendant that by using the phrase "course of conduct" in the torture murder subdivision, the legislature intended to require a series of distinct acts before the victim's death that are intended to inflict and actually inflict extreme physical pain (*see also* Mem of Assembly Codes Comm, Bill Jacket, L 1995, ch 1 at 22).

We therefore reject the People's assertion that the relevant "course of conduct" commenced with the gang's planning meeting held before the attack on Junior.  The plain text of the statute requires that the "course of conduct" actually inflict extreme physical pain upon the victim before death (Penal Law § 125.27 [1] [a] [x]).  Defendant's planning, as well as the psychological pain suffered by Junior while he was being chased by defendant and his accomplices, although horrible to contemplate, are not part of the course of conduct required under the statute; the planning did not cause Junior physical pain.

Moreover, we disagree with the People that the course of conduct element would be satisfied if defendant's fatal blow to Junior's neck was the only wound to cause Junior extreme physical pain before his death.  A single, isolated act cannot satisfy the course of conduct element (*see Valerio*, 60 NY2d at 670; *Wood*, 59 NY2d at 812), and the statute

clearly states that a "course of conduct" must inflict the requisite extreme physical pain before death.

We therefore agree with the Chief Judge that the course of conduct must cause extreme physical pain, not solely the fatal blow that caused Junior's death (*see* Wilson, Ch. J., concurring op at 6-7). We disagree, however, to the extent that the Chief Judge suggests that we have rendered Penal Law § 125.26 (2) (a) "entirely superfluous" (*see id.* at 7). The legislative history for the 2009 amendment that added this subdivision makes clear that in response to a specific crime of child abuse, the legislature intended to eliminate the "relish" or "pleasure" requirement where a defendant tortures a child less than 14 years old (*see* Assembly Mem in Support, Bill Jacket, L 2009, ch 482, at 6 ["In view of the atrocious nature of such a crime, when it is alleged that a parent has killed a child in a tortuous manner, the prosecution, in order to seek a life-without-parole sentence, should not have to prove that the defendant relished or evidenced a sense of pleasure in inflicting extreme physical pain. This bill eliminates that element of proof in the case of an adult alleged to have killed a child, assuring that a sentence of life imprisonment without possibility of parole may be sought in such circumstances"]). That is the key distinction between the two statutes, not the "course of conduct" requirement, which exists in both Penal Law § 125.27 (1) (a) (x) and § 125.26 (2) (a).

We nevertheless disagree with the Appellate Division that the People's evidence was not legally sufficient to establish the course of conduct element. The Appellate Division's holding appears to be based upon its conclusion that although defendant's fatal stab wound to Junior's neck caused Junior extreme physical pain before his death, the other

injuries Junior suffered beforehand were "superficial" (*see Estrella*, 214 AD3d at 459-460). The medical examiner who performed the autopsy testified that aside from the stab wound to his neck, Junior suffered several other sharp force injuries, as well as other blunt force injuries and defensive wounds. Junior's neck wound ultimately caused his death by exsanguination, and the medical examiner described his remaining sharp force injuries as "superficial," meaning that they impacted only the top layers of skin. The medical examiner clarified that "superficial" was a medical term, and that it had no bearing on the pain the wound would have caused.

This testimony as well as the surveillance video established that before defendant stabbed Junior in the neck, defendant's accomplices dragged Junior from the bodega, stabbed him multiple times with knives and a machete, and that Junior suffered several sharp force injuries, blunt force injuries, and defensive wounds as a result. There was a valid line of reasoning and permissible inferences from which a rational jury could conclude that these additional wounds, coupled with the fatal stab wound, caused Junior extreme physical pain before his death. Although a rational jury might have also concluded that only the fatal stab wound caused Junior extreme physical pain, we are required to draw every reasonable inference in the People's favor on a legal sufficiency review (*see Li*, 34 NY3d at 364). A rational jury could have concluded that Junior's other wounds, inflicted pursuant to a course of conduct during which Junior was dragged from the store to the street, and then while on the ground subjected to several stab wounds of varying degrees from multiple assailants, caused him extreme physical pain before his death.

We respectfully disagree with the Chief Judge that the statutory definition of "serious physical injury" is relevant to the meaning of "extreme physical pain" (*see* Wilson, Ch. J., concurring op at 4-6). The legislature could have chosen to define extreme physical pain, as it did with serious physical injury (*see* Penal Law § 10.00 [10]), or it could have chosen to equate torture with a level of injury rather than a level of pain, but it did not. In *People v Stewart* (18 NY3d 831 [2011]), upon which the concurrence relies, the Court acknowledged that "pain may itself be disabling," but the victim did not testify that his pain rose to that level (*see id.* at 832-833). Here, as the Chief Judge acknowledges, Junior was not alive to testify to the amount of pain he was in before his death. The jurors, who were presented with all the evidence regarding Junior's wounds, including graphic videotape evidence, were entitled to give the statutory words their ordinary meaning and rely upon their common sense and life experience to determine if Junior's physical pain would have been "extreme" (*see generally People v Versaggi*, 83 NY2d 123, 129-131 [1994]).

We further disagree that the legislature's use of the term "course of conduct" evinces a legislative intent to require a series of acts that are chargeable as separate crimes (*see* Wilson, Ch. J., concurring op at 8-9). The legislature could have required that multiple underlying crimes be committed for the element of torture to be satisfied. Indeed, the legislature has structured other crimes in precisely this manner by imposing both a durational element and requiring that multiple crimes be committed during that period (*see e.g.* Penal Law § 130.80). Inasmuch as our role in interpreting the statute is to effectuate the intent of the legislature (*see generally People v Holz*, 35 NY3d 55, 59 [2020]), we

decline to add an element that the legislature did not see fit to impose. Ultimately, although this case may not fit the paradigm of torture murder that most would envision, "all that was needed for the . . . charge to be sustained was for the People to satisfy its elements" (*Li*, 34 NY3d at 363 [internal quotation marks omitted]).

B.

We agree with the Appellate Division, however, that the People failed to establish by legally sufficient evidence that defendant "relished the infliction of extreme physical pain" or "evidenced a sense of pleasure in the infliction of extreme physical pain" (Penal Law § 125.27 [1] [a] [x]). The People's evidence with respect to this mens rea element consisted of testimony that, shortly after attacking Junior, defendant stated in a boastful tone that Junior was "not gonna eat for a good long time because [defendant] hit him in the neck." The People also presented evidence that defendant sought out Los Sures leadership after the attack to claim responsibility for stabbing Junior in the neck.

This evidence demonstrates, at most, that defendant took pride in having killed Junior, not that he took pleasure in causing Junior extreme physical pain before his death. The statute is clear that the defendant must relish or take pleasure in inflicting extreme physical pain, not simply in killing the victim (*see* Penal Law § 125.27 [1] [a] [x]). Moreover, inasmuch as the defendant must also intend that the victim be killed, and the statute requires that the victim's extreme physical pain occur prior to death, the statute requires that the defendant inflicted extreme physical pain and took pleasure in doing so *before* killing the victim (*see id.*).

Of course, intent can be inferred from conduct, and a defendant will rarely announce in the presence of witnesses that they are taking pleasure from inflicting pain upon the victim (*see generally People v Rodriguez*, 17 NY3d 486, 489 [2011]).  When a defendant inflicts needlessly brutal or prolonged suffering upon the victim before death, a rational jury may, based on the totality of the evidence, reasonably infer that the defendant took pleasure in inflicting extreme physical pain (*see People v Williams*, 78 AD3d 574, 575 [1st Dept 2010], *lv denied* 16 NY3d 746 [2011]; *see also People v Bohn* [decided today]).[3]

Those circumstances are not present here.  There was no evidence presented that defendant was aware at the time of the attack of how long it took Junior to die after he stabbed him, inasmuch as defendant and his accomplices immediately fled the scene of the attack.  Defendant's boasting was evidence that he believed that the murder would gain him status in the gang and that he took pleasure in causing Junior's death.  But the statute requires the defendant to take pleasure in inflicting extreme physical pain *before* the victim dies, not merely to take pleasure in the murder, even a murder that is particularly heinous, or in the perverse gains achieved by killing another.  We therefore conclude that the Appellate Division correctly held that the People failed to establish this element of the first-degree murder statute with legally sufficient evidence.

---

[3] Infliction of needlessly brutal or prolonged suffering before death is one fact that the People may prove and rely upon to establish that a defendant relished or took pleasure in the infliction of extreme physical pain, but we do not suggest that it is the only manner in which the People could prove this element.  Of course, the ultimate finder of fact is entitled to reject the People's evidence as to this element.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed.

WILSON, Chief Judge (concurring):

I concur in the result but write separately because I disagree with the majority's conclusion that the evidence here would be legally sufficient to meet the statutory "course of conduct" requirement.   More to the point, I disagree with some of the majority's

- 1 -

characterization of the statute itself.  My disagreement lies in three areas.  First, absent record evidence to the contrary, "superficial" wounds—defined as cuts to the uppermost layer of skin only—cannot cause "extreme physical pain."  Second, the continuous attack here should not be considered a "course of conduct" within the meaning of the statute; some cessation and resumption that would allow assaults to be charged separately should be required to meet the statutory definition of "course of conduct" in Penal Law § 125.27 (1) (a) (x).  Third, the result here leaves us either with no definition of the elements required to satisfy the torture murder provision or provides one that would allow a huge variety of ordinary homicides to be transmuted into A-I felonies, a result that does not fit the overall scheme of the Penal Law with regard to homicide.

At the outset, I note that I agree with the majority's holding in part II B: the People failed to establish that Mr. Estrella "relished" or "evidenced a sense of pleasure in the infliction of" extreme physical pain.  That holding is independently sufficient to require affirmance of the Appellate Division here, without the need for a foray into the course-of-conduct portion of the test.

That said, I also agree with several of the majority's observations about what a course of conduct should mean in the context of Penal Law § 125.27 (1) (a) (x).  I agree that more than one act must be involved.  I agree that the planning steps here are not acts that can be counted as part of the course of conduct, if for no other reason than that those planning acts did not themselves inflict extreme physical pain.  I further agree with the majority that each of the acts used to establish a course of conduct must have been intended to inflict extreme physical pain and also must actually have inflicted extreme physical pain.

I.

A

Penal Law § 125.27 (1) (a) (x) requires that a defendant have caused (and intended to cause) "extreme physical pain." Defendants' actions of dragging, stabbing and beating Junior, though absolutely horrific, are not consistent with our case law defining extraordinary forms of pain.

The term "extreme physical pain" is not defined in the Penal Law § 125.27 (1) (a) (x) or in our case law. On that point the majority and I agree. To resolve the meaning of that phrase, the majority conducts no analysis whatsoever, but instead offers two repetitive statements: "a rational jury could conclude that these additional wounds coupled with the fatal stab wound, caused Junior extreme physical pain before his death" (majority op at 7); and "[a] rational jury could have concluded that Junior's other wounds . . . , stab wounds of varying degrees from multiple assailants, caused him extreme physical pain before his death" (*id.*).

As the majority notes (and as the Appellate Division also observed), "the medical examiner described [Junior's] remaining wounds [other than the machete blow to his neck that killed him] as 'superficial,' meaning that they impacted only the top layer of skin" (*id.*). Superficial is, indeed, a medical term and it means that the cut stops at the epidermis—the top layer of skin—and does not extend into the dermis or hypodermis. More serious wounds caused by sharp objects that penetrate beyond the epidermis, which may affect blood vessels, muscles or tendons, are classified as lacerations or puncture

wounds, not superficial wounds.[1]  In this case, the medical examiner clarified during her testimony that the term "superficial" has no "bearing on the pain the wound would have caused" (*id.*).  That testimony, however, represents an absence of medical evidence that superficial cuts cause extreme physical pain.  Nothing in the record of this case assists in defining what the legislature meant by "extreme physical pain," or provides a basis to know whether that standard was met here.

To aid in defining "extreme physical pain," it is instructive to look to analogous definitions in the Penal Law.  "Physical injury" is defined as "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]).  "Serious physical injury" refers to "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (*id.* § 10.00 [10]).  Although "serious physical injury" is an element of many grave offenses, the highest grade of all but two of those offenses is Class B felony (*see e.g. id.* § 120.10 [2] [defining assault in the first degree]).  "Serious physical injury" is an element relevant to murder in the second degree (*id.* § 125.25 ["under circumstances evincing a depraved indifferent to human life . . . recklessly engages in conduct which creates a grave risk of serious physical injury or death to another person less than eleven years old and thereby causes the death of such person"]),

---

[1]     *See     e.g.*     Benjamin     Wedro,     "Wound     Care,"     available     at https://www.emedicinehealth.com/wound_care/article_em.htm (last accessed Mar. 6, 2024) ("Many wounds are superficial requiring local first aid including cleansing and dressing.  Some wounds are deeper and need medical attention to prevent infection and loss of function, due to damage to underlying structures like bone, muscle, tendon, arteries and nerves").

and murder in the first degree (*id.* § 125.27 (1) (a) (viii) ["as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or death of an additional person or persons, causes the death of an additional person or persons"]), both of which are Class A felonies.

The superficial cuts and blunt force injuries described by the medical examiner in this case would not meet the definition of "serious physical injury" required for various class A and B felonies. The medical examiner who performed Junior's autopsy testified that the injuries leading up to the fatal injury did not cause Junior's death and did not testify that those injuries would have caused serious and protracted disfigurement and impairment of his health. "Serious physical injury," an element of crimes less serious than the torture murder offense at issue here, must require a lower standard of pain and disability than Penal Law § 125.27 (1) (a) (x) requires for "extreme physical pain."

Our case law is instructive on this point as well. In *People v Stewart*, we held that a "serious [assault] involving numerous blows with a sharp instrument . . . described in their most acute aspect by the treating emergency room physician as 'superficial' " did not qualify as "serious physical injury" (18 NY3d 831, 832 [2011]). There, as here, the medical testimony was that the wounds would have required simple, non-invasive care except that in *Stewart*, one wound required stitches. Because we have held that superficial cuts—even those that require stitches—do not constitute a "serious physical injury," it would be

incongruous to contend that such cuts and bruises can cause the "extreme physical pain" required to elevate a murder to one that is death eligible.[2]

Furthermore, in *Stewart* we specifically noted the absence of evidence of the degree of pain suffered. Although the victim in *Stewart* was alive and could testify as to the degree of pain, whereas Junior is not, in *People v Bohn*, which we heard and decided simultaneously with this case, the record contained expert testimony as to the extreme degree of pain suffered by the decedent. Such testimony could have been attempted here, but instead, the medical examiner testified that the superficial wounds were not related to the degree of pain, and offered no testimony about the degree of pain likely caused by such wounds.

B

It is also important to note that the legislature has chosen to enhance the available sentences when certain egregious circumstances are met. Of particular relevance here is Penal Law §125.26, which itemizes the circumstances in which a murder can become an "aggravated murder," which renders it a class A-I felony. That section was added in 2005, and it was amended in 2009 to add what is now § 125.26 (2), which provides that a murder is an A-I felony when:

> "2. (a) With intent to cause the death of a person less than fourteen years old, he or she causes the death of such person, and the

---

[2] *See also People v Murray*, 222 AD3d 496 (1st Dept 2023) (three-centimeter cut that required stitches did not constitute a serious physical injury); *People v Minchala*, 194 AD3d 754, 755 (2d Dept 2021) (evidence legally insufficient to show serious physical injury when victim was "stabbed multiple times by rival gang members" and the "multiple lacerations and wounds to his neck, head, chest, and abdomen" were treated with sutures).

defendant acted in an especially cruel and wanton manner pursuant to a course of conduct intended to inflict and inflicting torture upon the victim prior to the victim's death. As used in this subdivision, "torture" means the intentional and depraved infliction of extreme physical pain that is separate and apart from the pain which otherwise would have been associated with such cause of death; and

> (b) The defendant was more than eighteen years old at the time of the commission of the crime."

When interpreting the torture murder provision in Penal Law § 125.27 (1) (a) (x), we should keep in mind the above provision. We presume the legislature is familiar with its own statutory scheme (*see e.g. People v Hedgeman*, 70 NY2d 533, 537 [1987]; *People v Roberts*, 31 NY3d 406, 418 [2018]), which presumption is particularly strong where the two provisions both exist in the same code and, indeed, are in immediately adjacent sections. The majority's broad interpretation of Penal Law § 125.27 (1) (a) (x) would render § 125.26 (2) entirely superfluous. Perhaps more importantly, § 125.26 (2) (a) evidences a legislative judgment that an A-I felony for torture murder should be limited to extreme physical pain that is "separate and apart from the pain which otherwise would have been associated with such cause of death." It would make no sense to impose that additional requirement on the torture murder of a victim under 14 years of age, while having no such requirement for the torture murder of adults (or 14-year-olds).

The broader point to take from Penal Law § 125.26 is that the legislature has carefully crafted the Penal Law to designate certain types of murders A-I felonies. The legislature's supplementation of the Penal Law through the enactment of § 125.26 should bear on our interpretation of provisions of the Penal Law, which we should interpret not in

isolation so as to reach a result that renders the later provision meaningless, but rather as part of an integrated statutory scheme (*see Mancini v Off. of Children and Family Services*, 32 NY3d 521, 525 [2018]).  In sum, the statutory structure, our case law, and common sense compel the conclusion that, without some different evidence as to the degree of pain, superficial wounds do not rise to the level of causing "extreme physical pain" as contemplated by Penal Law § 125.27 (1) (a) (x).

## II.

The gang attack on Junior should not be deemed to constitute a course of conduct, because it is chargeable as a single act under the Penal Law, not a series of separate crimes. A continuous series of blows, stabs or gunshots are not each chargeable as a separate crime. Here, the attack was continuous, and although it involved a group of assailants involved in a concerted attack (and therefore each could be charged with the acts of all the others), had Junior not died, no attacker could have been convicted of a separate count of assault for each blow or cut (*see e.g. People v Kaid*, 43 AD3d 1077, 1079 [2d Dept 2007] ["[T]he four defendants, acting in concert, committed one continuous assault upon the complainant over a short period of time, with no pronounced break. The fact that more than one dangerous instrument allegedly was used by the defendants, and more than one blow was struck causing the complainant several injuries, does not transform this single criminal incident into multiple assaults"]; *People v Genao*, 154 AD3d 492, 493 [1st Dept 2017] [holding a single assault count not duplicitous because the "trial evidence established a

single, continuous fast-paced assault on a taxi driver, even if the assault began inside the taxi and quickly moved outside of it, and even if more than one weapon was used"]).

Although I would agree with the majority that a course of conduct requires more than a single act, I would hold that a single continuous series of blows, strikes or shots is a single act for the purposes of the course-of-conduct requirement in Penal Law § 125.27 (1) (a) (x), just as it is in our jurisprudence on duplicitousness. Otherwise, a huge number of conventional murders will be punishable as torture murder. For example, the medical examiner in this case testified that some of the superficial cuts could have been caused by fingernails. Under the majority's logic, someone who grabbed a victim's arm, scratching it, and then killed the person by a method satisfying the majority's definition of "extreme physical pain" (which the fingernail scratch might be) could be convicted of torture murder.

### III.

That brings me to my third point: the majority's opinion either provides no meaningful guidance or transforms a huge number of conventional homicides into A-I felonies. The facts in this case are horrific, and the accompanying public outrage is completely appropriate. But that should not factor into our determination of whether the gang murder of Junior satisfies the requirement of proving that the defendants engaged in a course of conduct intended to cause, and at least two acts of which caused, extreme physical pain. Suppose a defendant fires two shots, one which grazes his victim, causing a superficial skin injury, and the other kills him in an extremely painful way; or the

defendant slashes the victim with a broken bottle cutting only the epidermis, and then kicks the victim to death. Are those now chargeable as torture murder?

Sadly, those types of homicides, and other conceptually equivalent variants, are quite common. But it cannot have been the legislature's intention to transform all such homicides into A-I homicides. The entire structure of the Penal Law—particularly as to homicides, but as to other crimes as well—indicates otherwise, because the legislature has made careful gradations and enhancements applicable to specific circumstances.[3] Gang assaults resulting in the victim's death have occurred with unfortunate frequency for decades now, yet, unlike the enhancements for gang assault, the legislature has not chosen to enhance the punishment for gang-related murders. As horrifically senseless and brutal the gang killing of a completely uninvolved teenager is, that horror does not transform a gang murder into torture murder. Instead, if we accept the proposition that the hypotheticals I provided above are not facts that would permit prosecution for torture murder, it remains unclear where the line is. I am left to wonder, though, whether the horror of this case provides a one-off exception to a yet invisible rule.

---

[3] For example, the legislature enacted specific crimes related to gang assault in the first and second degrees, each of which elevates the level of felony by one step beyond what is provided absent gang involvement. *Compare* Penal Law §§ 120.05 and 120.10 *with* §§ 120.06 and 120.07.

SINGAS, J. (concurring):

I concur in the result and with Chief Judge Wilson's opinion, except insofar as it concludes that the evidence that defendant "relished" or "evidenced a sense of pleasure" in "the infliction of extreme physical pain" was legally insufficient (Penal Law § 125.27 [1]

- 1 -

[a] [x]).  Based on defendant's own statements delighting in the vulnerable location of the fatal wound and the fact that the victim was not going to be able to eat "for a good long time," I believe a jury could have rationally concluded that this element was satisfied.

Order insofar as appealed from affirmed. Opinion by Judge Troutman. Judges Rivera, Garcia, Cannataro and Halligan concur. Chief Judge Wilson concurs in result in an opinion. Judge Singas concurs in result in a separate concurring opinion.

Decided March 19, 2024